## A. KELLY and D. WILLIAMS *v.* THE STATE.

1. THEFT OF ANIMALS.—The act of August 21, 1876, providing that theft of property of less value than $20 shall be punishable by confinement in the county jail, etc., does not repeal the act of May 17, 1873, amendatory of Article 766 of the Penal Code, whereby theft of cattle, sheep, goats, or hogs is punishable by imprisonment in the penitentiary. The case of *Spence* v. *The State*, *ante* p. 541, cited on this point with approval.

2. EVIDENCE—PRACTICE.—If, on cross-examination of a state's witness, the defendant calls out illegal testimony, he is not entitled to have it withdrawn from the jury.

3. SAME—CATTLE-MARKS.—A mark is admissible as proof of ownership of an animal, though not recorded. *Johnson* v. *The State, ante* p. 333, cited on this question and approved.

4. SAME—EFFECT OF IMPEACHMENT OF A WITNESS.—The credibility of a witness, although impeached, is a question for the jury, and the court should not assume that the witness has been successfully impeached, and therefore instruct the jury to disregard his testimony.

5. CHARGE OF THE COURT.—The only evidence identifying the accused as the perpetrators of the theft was that of a witness for the state, who testified that he helped the accused carry off and kill the stolen hog, but then had no reason to doubt the ownership claimed by the accused. *Held,* that as the jury might, from all the evidence, have inferred that the witness was an accomplice, the court should, though not so asked, have instructed the jury that, if they did so infer, they could not convict on the uncorroborated testimony of the witness.

APPEAL from District Court of Washington. Tried below before the Hon. E. B. TURNER.

A full and clear statement of the case is given in the opinion.

*Breedlove & Ewing,* for the appellants.

1st. The court erred in overruling defendants' motion to transfer the case to the county court.

To understand this matter fully, reference must be made to the various sections of the Code bearing upon it. Article 757 of the Penal Code, as originally adopted, provides thus : " Theft of property under the value of twenty dollars shall be punished by confinement in the penitentiary for a term of two years."

By Article 758 this Article did not apply to theft of property from a house, nor to cases of theft of any particular kind of property, where the punishment is specially prescribed.

Article 766 did specially prescribe a particular kind of punishment for the theft of hogs and other kinds of animals therein named. And so the law stood as long as it applied to white people ; but, after emancipation, benevolent legis-

lators foresaw that a change in the law was demanded for the negro race; hence the legislature of 1866, by act of November 12, 1866, amended Articles 757 and 766, and by that amendment of Article 757 incorporated a part of original Article 758 into it. By that amendment Article 766 punished theft of hogs, etc., if the value was less than $20, by imprisonment in the county jail for a term not exceeding two years, and by fine not exceeding $100, or by imprisonment without fine. See 2 Pasc. Dig., Arts. 6547, 6548. By act of May 18, 1873, Laws 1873, p. 80, Article 766 was again amended, and Article 766 (a) was also enacted. It provides: " If any person shall steal any sheep, hog, or goat, he shall, if the value of the property stolen is twenty dollars or over, be punished by confinement in the penitentiary not less than two nor more than five years; if the value of the property is under twenty dollars he shall be punished by imprisonment in the penitentiary for not less than one nor more than two years."

The act of 1866, Article 766, provided alike for the punishment of theft of cattle, sheep, goat, and hog; but the act of May, 1873, makes a distinction in the punishment. Article 756 provides as to cattle, and 766 (a) for sheep, hog, and goat.

But Article 757, as amended in 1866 (Pasc. Dig., Art. 6547), was not repealed by the act of May 17, 1873; and Article 757, as amended, has in it the clause here quoted:

" The provisions of this Article shall not apply to cases of theft where a different punishment for any specific offense is expressly provided by law."

This clause was necessary in order to give force to Article 766. This Article was not affected by the Article of May 17, 1873; and this Article 757 of the act of 1866, and the act of May 17, 1873, amendatory of Article 766 of the act of 1866, were the laws in force when these defendants were indicted; and if they had been convicted prior to

November 21, 1876, when the laws of the fifteenth legislature took effect, they would have been subject to these acts. But the fifteenth legislature (see Laws, 242) enacted, "An act to amend Article 757 of an act entitled 'An act to adopt and establish a penal code for the state of Texas,' approved August 26, 1856; November 12, 1866. Section 1. Article 757 of the above recited act shall hereafter read as follows, viz.: Theft of property under the value of twenty dollars shall be punished by imprisonment in the county jail for a term not exceeding one year, during which time the prisoner may be put to hard work, and by fine not exceeding five hundred dollars, or by such imprisonment without fine," omitting the balance of the Article. "Section 2. That all laws and parts of laws in conflict with the provisions of this act be, and the same are hereby, repealed." Approved August 21, 1876. Took effect at ninety days.

Now, we say that a careful reading and study of these various acts shows that this act of August 21, 1876, did just what it says: "That all laws and parts of laws in conflict with the provisions of this act be, and the same are hereby, repealed."

It amends Article 757 of November, 1866, omitting the latter clause of that act. It took that clause to give effect to Article 766 of the same act, and as amended in May, 1873; but that clause is not incorporated into the act as amended August 21, 1876. Section 2 of this Article is sweeping. It repeals all laws and parts of laws in conflict with it.

What laws are in conflict with it? Clearly the act of May 17, 1873, because it got vitality from the Article 757 of November, 1866, which this act of August 21, 1876, amends, leaving out the vitalizing clause. How can these appellants be punished under a law that is no longer in force? Even if it was, Article 14 of the Code (1616 Pasc. Dig.) applied to this case.

By the act of August 21, 1876, the offense with which

the appellants stand indicted becomes a misdemeanor, and should, therefore, go to the county court.

The act says "theft of property under the value of twenty dollars," etc. This language covers all descriptions of property.

The 2d section repeals all laws in conflict with the provisions of the act. If the act was only intended to amend Article 757, why add section 2 at all?

What did the legislature mean by section 2? Certainly just what it says. It repeals all laws and parts of laws in conflict with the provisions of the act. What are the provisions of the act? "Theft of property under the value of twenty dollars shall be punished," etc.

We assert that it means to say "theft of all property under the value of twenty dollars shall be punished," etc.; and, being the latest provision of the legislature on the subject, it has the further force given to it by position in point of time.

If our views are correct on this point, then, of course, the case must be reversed. It matters much before which tribunal these appellants should be tried, even if guilty. Imprisonment in the penitentiary inflicts disgrace deeper and more lasting; it also brings disfranchisement as one of its attendants. Others might be mentioned, but let these suffice. Appellants claim the right to be tried in the county court; if it is their right, it should be granted.

*George McCormick*, Assistant Attorney General, for the State.

ECTOR, Presiding Judge. The appellants were jointly indicted for the theft of a hog, charged to be the property of Isaac Mann, and of the value of $10. The indictment alleges the theft to have been committed on the 4th day of December, 1874.

The defendants, in the court below, moved to have the

case transferred to the county court on the ground that the value of the property described in the indictment is under $20, and that, under the statute of August 21, A. D. 1876, the county court had jurisdiction of the offense. This motion was overruled; the defendants were tried and convicted, and their punishment fixed at one year in the penitentiary. Motions for new trial and in arrest of judgment were made and overruled.

The defendants' application to transfer the cause to the county court was properly overruled. We do not believe that the 2d section of the act of August 21, 1876, published in the general laws of the fifteenth legislature, on page 242, repealed Article 766 (a) of the Penal Code of May 17, 1873. By an examination of the act of August 21, 1876, it will be seen by its title that it is "An act to amend Article 757 of an act entitled 'An act to adopt and establish a penal code for the state of Texas,' approved August 26, 1856; November 12, 1866." To give the 2d section of the act of 21st August, 1876, the construction that is claimed by the counsel for the defendant, would make the law unconstitutional; it would violate section 35 of the 3d Article of the Constitution of the state of Texas. This has been decided during the present term of the court in the case of *Spence* v. *The State,* and the various acts referred to and commented upon in the able brief of defendants' counsel are there passed upon, *ante* p. 541.

The 2d ground set out in the motion for a new trial is that the court erred in admitting illegal evidence. The bill of exceptions taken by the counsel for the defendants shows that the evidence which is claimed to be illegal was drawn out on cross-examination. If this is true it would then be too late for the defendants to object to it, if in response to a question asked by their counsel. The statement of facts sets it down as being drawn out by the state. We think it is immaterial, so far as this investigation is con-

cerned, whether the "mark" of Charles Mann was recorded
or not.   A mark is admissible as proof to go to the jury of
ownership of hogs, although such mark be not recorded.
*Dixon* v. *The State*, 19 Texas, 134; *Johnson* v. *The
State*, decided by this court at the late Tyler term, 1876,
*ante* p. 333.

The 3d ground taken by the defendants is that the
court erred in its charge to the jury as a whole, and because
the court did not instruct the jury in regard to the effect of
the impeachment of a witness.   The competency of a wit-
ness is always a question for the court, and his credibility
for the jury.   The testimony of a witness attempted to be
impeached is always before the jury.   His credibility is a
question for them, and it is improper for the court, upon
the assumption that he is infamous and unworthy of credit,
to instruct the jury to disregard his testimony.   *Boon* v.
*Weathered*, 23 Texas, 687.

In determining whether the verdict of the jury was con-
trary to the evidence, we will give all the material testimony,
as set out in the statement of the facts in the record:

Isaac Mann testified that his name is Isaac Mann.   He
then said: "I live in Washington county.   I owned a sow
about one year old, of the Essex breed of hogs.   The hog
was my property, and I did not give my consent to the
defendants now on trial, nor to any one else, to take the
sow.   The sow was heavy with pigs, and was worth about
$10.   About the 1st of December, A. D. 1874, the said sow
was missing; up to that time the sow had been in my pos-
session.   A few days afterwards Mr. Carnes, one of my
neighbors, came with the head of my sow, and threw it over
the fence where I was.   I recognized the head as that of
my sow, by the mark.   My mark is two splits in the right
ear and an underbit in the left ear; my mark is recorded in
the record books of Washington county.   I recognized the
head to have been on my hog by the ear-marks only.   A

great many other freedmen live in the same neighborhood;. it is thickly settled. I afterwards went to a pond of water in Mr. Carnes' field, near a mile from defendant Williams' house, and there found the skin and entrails of a hog in the pond. In the pig-bag, with the entrails, I found six pigs. I have not found nor seen my sow since. My sow was a black sow."

Willis Carnes, a witness for the state, said: "I lived near Isaac Mann in December, 1874. About December 1,. 1874, I found the head, skin, and entrails of a hog in a. pond in my field. I carried the head to Isaac Mann's cow-- pen, for him to see if it was his property. He claimed it. I thought when I first found it that it was Mann's hog. I had known the hog before, had tried to buy it; it was one of the Berkshire breed, as I thought. All this was in Washington county, in the state of Texas. There, was a scar on the hog's nose; it had been accidentally shot on the nose. This helped me to recognize the hog."

Peter Blount, for the state, says: "Some two years ago David Williams, one of the defendants, said he had a hog on Jim Mann's place, and asked me to go with him and help him to get it. We started, and Williams said he had some business at Jesse Lott's about splitting rails. We stopped at Lott's, and did not get to where the hog was until after dark. After supper we went on, and found the hog on Col. Mann's place, over in the field—a good way in the field; found the hog alive. After we had carried the hog some distance, David Williams said it was too heavy to carry, and we laid it down, and skinned it, cut off its head, and took out the entrails and threw all them one side, and carried the meat on to Williams' house. Anthony Kelly,. the defendant on trial, was along with us. Anthony Kelly got a part of the meat. Anthony lived near by, on the same place. I don't know whether the hog we killed was. a sow or not. At that time I was hired to David Williams.

·by the month to pick cotton. I afterwards continued with him, and helped him to split rails for Jesse Lott. I ate some of the meat of the hog we killed. We stopped and skinned the hog about one-half mile from Williams' house. I afterwards learned that Isaac Mann had lost a sow. I had no reason to suspect the hog was not his; saw no attempt at concealment. I told about this hog being killed some two or three weeks afterwards. Had a serious difficulty with David Williams. We were both drinking. Dave beat me up pretty badly. This was before I told about the hog. Both of these defendants were tried at Washington before Justice of the Peace Wyatt, and bound over. I was a witness at that time. I have not had any conversation with either of the defendants about this case since I testified before Dr. Wyatt. I did not admit to David Williams, at the house of Abram Darcas, that I knew he did not kill the hog, but that I told and swore to it because he beat me so; nor did I at any time make any admission to that effect, nor otherwise, in the presence of Abram Darcas and Ennis Randle, nor either of them. Have had no conversation with either of them about this case. The hog we killed had a white spot on its shoulder. It was skinned in Mr. Carnes' field. Williams just threw the head, skin, and offal to one side."

Ennis Randle, called by defendants, said: "I am acquainted with both of these defendants; also with Peter Blount, the witness for the state. Some time in August, 1875, I rode with David Williams, one of the defendants, up to Abram Darcas' house, on the bluff in Hidalgo Prairie. When we got there, Peter Blount and Abram Darcas were standing in the yard. David Williams said to Peter Blount: 'Peter, why did you swear that lie on me before Dr. Wyatt, about the hog?' Peter replied, 'Dave, I know you did not kill the hog; but I said so because you beat me so. You employ lawyer Breedlove to defend you; he cleared

Nelson Smith, and he will clear you ; and if you have to
pay, I will pay half of it in the fall.' "

Abram Darcas also testified to about the same thing as
Ennis Randle. He also said that he was not a witness
before Justice Wyatt, before the examining court, but that
his brother, Adam Darcas, was. Adam Darcas said he was
a witness before the examining court. The witnesses Mann
and Carnes were recalled by the state, and said Abram
Darcas was a witness for the defendants before Justice
Wyatt in the examining court.

Take out the testimony of Blount, and there is no evidence
in the record which is calculated to connect the defendants
with the killing of the hog described in the indictment. It
is made the duty of this court to revise the judgment of the
lower court, both on the law and the facts, and to reverse
the judgment whenever this court is satisfied that there is
not sufficient legal and competent evidence to support the
judgment. In the exercise of this duty, after a careful
examination of the evidence adduced before the jury, we
think that the evidence is not sufficient to allow the verdict
to stand and become a precedent in the adjudication of other
offenses under the law. In cases of felony it is also made
the duty of the district judge to deliver to the jury a charge
in writing, in which he shall distinctly set forth the law
applicable to the case. *Johnson* v. *The State*, 27 Texas,
758.

It is expressly provided in the Code "that a conviction
cannot be had upon the testimony of an accomplice unless
corroborated by other evidence tending to connect the
defendant with the offense committed, and the corroboration
is not sufficient if it merely shows the commission of the
offense." Pasc. Dig., Art. 3118.

The witness Peter Blount, on his examination, it is true,
denied any criminal complicity with the defendants in the
killing of the hog testified to by him ; still, the jury might

·very reasonably have inferred that he was equally guilty with the defendants if they believed that the hog which he ·says he helped to kill was the animal that Mann lost.   If so, then the jury should have been instructed that Blount's ·testimony would not warrant a conviction unless corroborated by other evidence tending to connect the defendants with the offense.   In this view of the case the counsel for ·defendants asked no instruction.   But, though not asked for, as it was applicable to the case, it was imperative upon ·the court to have given it.   *Williams and Smith* v. *The .State*, 42 Texas, 394.

The judgment is reversed and the cause remanded.
*Reversed and remanded.*